# EXHIBIT 1

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Mark D. Potter(SBN 166317);James M. Treglio(228077);Isabel R. Masanque(29273
Bree Durso (SBN 307198)

FIRM NAME: Potter Handy LLP

STREET ADDRESS: 100 Pine St., Ste 1250

CITY: San Francisco      STATE: CA      ZIP CODE: 94111

TELEPHONE NO.: (415) 534-1911      FAX NO.: 888-422-5191

EMAIL ADDRESS: mark@potterhandy.com;jimt@potterhandy.com; isabelm@potterhandy.com
breedurso@potterhandy.com

ATTORNEY FOR (name): Plaintiff, Yolanda Pitre

**Electronically FILED**
by Superior Court of California, County of San Mateo

ON 5/18/2026

By /s/ Owen Tapang
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO

STREET ADDRESS: 400 County Center

MAILING ADDRESS:

CITY AND ZIP CODE: Redwood City, CA 94063

BRANCH NAME: Hall of Justice and Records

CASE NAME: Pitre v. Uplifting Results Labs, Inc.

| **CIVIL CASE COVER SHEET**<br>[x] **Unlimited**    [ ] **Limited**<br>(Amount demanded exceeds $35,000) (Amount demanded is $35,000 or less) | **Complex Case Designation**<br>[ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>26-CIV-03984 |
|---|---|---|
| | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Asbestos**
[ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[x] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10

**Civil Case Cover Sheet**

**CM-010**, Page 1 of 3

→

Page 2

2. Is this case complex under rule 3.400 of the California Rules of Court? [x] Yes [ ] No

If the case is complex, mark the factors requiring exceptional judicial management:

a. [ ] Large number of separately represented parties

b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. [ ] Substantial amount of documentary evidence

d. [ ] Large number of witnesses

e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):*

a. [x] monetary

b. [x] nonmonetary; declaratory or injunctive relief

c. [ ] punitive

4. Number of causes of action *(specify):*

5. Is this case a class action suit? [x] Yes [ ] No

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 18, 2026

James M. Treglio

| (TYPE OR PRINT NAME) | ▶ | (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY) |

---

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/ Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/ environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord-tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case involves an Employment Development Department decision, check this item instead of Wrongful Termination or Other Employment)*

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication (47)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**Civil Case Cover Sheet**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON 5/18/2026
By /s/ Owen Tapang
Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
UPLIFTING RESULTS LABS, INC. D/B/A SUPERGUT, a Delaware Corporation; and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
YOLANDA PITRE, individual and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Mateo County Superior Court

Hall of Justice and Records, 400 County Center, Redwood City, CA 94063

CASE NUMBER:
*(Número del Caso):* 26-CIV-03984

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mark D. Potter; James M. Treglio; Isabel Rose Masanque;Bree Durso;100 Pine St. Ste 1250, San Francisco, CA 94111;(415) 534-1911

DATE:
*(Fecha)* 5/18/2026

Clerk, by
*(Secretario)* Owen Tapang , Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* UPLIFTING RESULTS LABS, INC. D/B/A SUPERGUT

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
Bree Durso (SBN 307198)
breedurso@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiff

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON     5/18/2026
By     /s/ Owen Tapang
            Deputy Clerk

26-CIV-03984

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| YOLANDA PITRE, an individual and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>UPLIFTING RESULTS LABS, INC. D/B/A SUPERGUT, a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | **CLASS ACTION**<br><br>**CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:**<br><br>　(1) **THE CONSUMER LEGAL REMEDIES ACT (Civil Code § 1750, et seq.,);**<br>　(2) **THE FALSE ADVERTISING LAW (Business and Professions Code § 17500, et seq.,);**<br>　(3) **FRAUD, DECEIT, AND/OR MISREPRESENTATION;**<br>　(4) **CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*; and**<br>　(5) **UNJUST ENRICHMENT.**<br><br>**DEMAND FOR JURY TRIAL** |

Class Action Complaint　　　　　Page 6

Plaintiff Yolanda Pitre ("Plaintiff"), individually and on behalf of classes of similarly situated individuals (defined below), brings this action against Uplifting Results Labs, Inc. d/b/a Supergut ("Supergut" and/or "Defendant") and Does 1 through 100 (collectively, "Defendants").

## INTRODUCTION

1. Plaintiff, by and through counsel, brings this class action against Defendant to seek redress for its unlawful, deceptive and misleading labeling, advertising, and marketing practices concerning Defendant's dietary supplement product previously marketed as "Supergut GLP-1 Booster" and currently marketed as "Supergut GLP-1 Daily Support" (the "Product").

2. At the time Plaintiff purchased the Product, Defendant marketed and sold the Product under the name "GLP-1 Booster."

3. The front label prominently represented, among other things: "GLP-1 Booster;" "Clinically Proven;" and "Proven to Control Cravings Naturally." These representations appeared prominently and in close proximity on the Product packaging viewed and purchased by Plaintiff.





4. At some point after Plaintiff's purchase, Defendant materially changed the Product's branding and labeling. Among other changes, Defendant:

    a. Changed the Product name from "GLP-1 Booster" to "GLP-1 Daily Support;"

    b. Removed the representation "Proven to Control Cravings Naturally;"

    c. Removed or softened prior "control cravings" representations; and

    d. Replaced those claims with more generalized "appetite control" and "curb cravings naturally" language.

*Old and New Packaging:*                  *New Marketing Language:*





*Before Label Change:*                  *After Label Change:*



2

5. Plaintiff's claims concern both:

    a. The materially misleading representations appearing on the earlier "GLP-1 Booster" packaging purchased by Plaintiff; and

    b. Defendant's continuing misleading GLP-1-related marketing and appetite-control representations on the currently marketed "GLP-1 Daily Support" product.

6. In the modern marketplace, "GLP-1" has acquired substantial commercial and consumer meaning due to widespread public awareness of GLP-1 receptor agonist drugs such as Ozempic, Wegovy, and Mounjaro, which are widely associated with significant appetite suppression, reduced cravings, metabolic regulation, and weight-management effects.

7. Accordingly, reasonable consumers encountering a product marketed as a "GLP-1 Booster" that is purportedly "Clinically Proven" and "Proven to Control Cravings Naturally" would understand the Product to provide meaningful GLP-1-related physiological benefits beyond ordinary digestive support or generalized fiber supplementation.

8. Defendant intentionally marketed the Product in a manner designed to capitalize on consumer familiarity with GLP-1-related weight-management therapies and the growing public demand for appetite-control products associated with GLP-1 functionality.

9. In reality, the Product consists primarily of common dietary fibers and resistant starch ingredients, including maize fiber, green banana resistant starch, resistant potato starch, and beta glucan.

10. While certain dietary fibers may indirectly influence satiety-related pathways or endogenous GLP-1 secretion to a limited degree under some conditions, the Product does not contain prescription GLP-1 receptor agonists or ingredients likely to provide the type, magnitude, reliability, or clinically meaningful appetite-suppressing and craving-reduction effects reasonably conveyed by Defendant's advertising.

11. Defendant's advertising materially exaggerated the significance and expected consumer benefit of any potential fiber-related satiety effects. By branding the Product as a "GLP-1 Booster," labeling it "Clinically Proven," and representing that it was "Proven to Control Cravings

3

Naturally," Defendant created the misleading net impression that the Product provided meaningful GLP-1-mediated appetite-control benefits comparable to those consumers associate with GLP-1-based interventions.

12.     Defendant further failed to disclose material facts necessary to make its affirmative representations not misleading, including that any potential relationship between ordinary dietary fiber consumption and endogenous GLP-1 signaling is indirect, variable, modest, and not comparable to the clinically significant appetite-suppressing effects consumers reasonably associate with GLP-1-related products.

13.     Defendant's subsequent rebranding and removal or modification of prior claims further demonstrates the materiality of the challenged representations. Although Defendant later changed the Product name to "GLP-1 Daily Support" and replaced "Proven to Control Cravings Naturally" with softer "appetite control" and "curb cravings naturally" language, Defendant continues to market the Product in a manner that communicates meaningful GLP-1-related appetite-control functionality beyond what the Product can reasonably deliver.

14.     Defendant's current "GLP-1 Daily Support" labeling continues to emphasize GLP-1 functionality and appetite-related benefits, including representations concerning "appetite control" and "curb cravings naturally," thereby continuing to create the misleading impression that the Product provides clinically meaningful appetite-suppressing benefits associated with GLP-1-related interventions.

15.     Defendant has also marketed other products using substantially similar GLP-1 and craving-control representations. For example, another Supergut product marketed as a prebiotic shake prominently represented that it could "Control Cravings" and "Boost GLP-1." As shown here:

 

16. These representations and labeling changes are material because they demonstrate Defendant's awareness of the importance of GLP-1 and craving-control messaging to consumers and Defendant's efforts to continue leveraging GLP-1-related marketing while softening or reframing earlier, more aggressive claims.

17. Defendant's labeling and advertising were and remain false and misleading because they communicate to reasonable consumers that the Product delivers clinically meaningful appetite-control and metabolic benefits associated with GLP-1 functionality when it does not provide the type or degree of benefits reasonably conveyed by Defendant's marketing. The omission of material information regarding the Product's true nature, limitations, and likely physiological impact further contributes to the misleading impression created by Defendant's GLP-1-related advertising.

18. Under federal and California law, food labeling is misleading if it fails to reveal material facts necessary to make affirmative representations not misleading in light of the circumstances under which they are made. 21 U.S.C. § 343(a); 21 C.F.R. § 1.21(a); Cal. Health & Saf. Code §§ 110100, 110760.

19. Defendant's conduct violates the California Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750 et seq.; the False Advertising Law ("FAL"), Business & Professions Code § 17500 et seq.; and the Unfair Competition Law ("UCL"), Business & Professions Code § 17200 et seq, by misrepresenting that the Product has characteristics, uses, and benefits it does not have, and by representing that it is of a particular standard or quality when it is not.

20. Plaintiff and members of the proposed Class purchased the Product in reliance on Defendant's representations and paid a price premium for the Products marketed as providing meaningful GLP-1-related appetite and craving-control benefits.

21. Had Plaintiff and Class members known the true nature, limitations, and ordinary functionality of the Product, they would not have purchased the Product or would have paid substantially less for it.

**JURISDICTION AND VENUE**

22. This Court has jurisdiction over this action under California Code of Civil Procedure § 410.10. The aggregated amount of damages incurred by Plaintiff and the Class exceeds the

5

$25,000 jurisdictional minimum of this Court. The amount in controversy as to the Plaintiff individually and each individual Class member does not exceed $75,000, including interest and any pro rata award of attorneys' fees, costs, and damages. Venue is proper in this Court under California Bus. & Prof. Code § 17203, Code of Civil Procedure §§ 395(a) and 395.5 because Defendants do business in the State of California and in the County of San Mateo. Defendants have sold the Product in the County of San Mateo which has caused both obligations and liability of Defendants to arise in the County of San Mateo.

## PARTIES

23.     Plaintiff is, and at all times alleged in this Complaint was, an individual and a resident of San Mateo, California. Plaintiff makes her permanent home in California and intends to remain in California.

24.     Defendant Uplifting Results Labs, Inc. is a Delaware Corporation doing business in the United States and the state of California.

25.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff, who therefore sues the Defendants by such fictitious names under the Code of Civil Procedure § 474.  Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 100 when such identities become known. Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

26.     At all times herein mentioned, Defendants, and each of them, were an agent or joint ventures of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

6

27. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## SUBSTANTIVE ALLEGATIONS

28. Defendant manufactures, distributes, markets, advertises, and sells the Product throughout California and the United States.

29. During the relevant Class Period, Defendant marketed and sold the Product under the name "GLP-1 Booster."

30. At the time Plaintiff purchased the Product, the front label prominently displayed representations including:

    a. "GLP-1 Booster";

    b. "Clinically Proven"; and

    c. "Proven to Control Cravings Naturally."

31. These representations appeared prominently together and in close proximity on the Product packaging viewed and purchased by Plaintiff.

32. Defendant also marketed other products using substantially similar GLP-1 and craving-control representations. For example, Defendant marketed a prebiotic shake product using representations including "Control Cravings" and "Boost GLP-1."[1]

33. Upon information and belief, Defendant later materially changed the Product's branding and labeling.

34. Specifically, Defendant:

    a. changed the Product name from "GLP-1 Booster" to "GLP-1 Daily Support";

---

[1] Plaintiff has included representative images of these labels and advertisements in this action, including images showing Defendant's earlier labeling and subsequent label revisions.

7

b. removed the "Proven to Control Cravings Naturally" representation;

c. removed or softened prior craving-control messaging; and

d. replaced those claims with more generalized "appetite control" and "curb cravings naturally" language.

35. Despite these revisions, Defendant continues to market the Product using GLP-1-related and appetite-related functionality claims, including representations concerning "appetite control" and "curb cravings naturally."

36. Defendant's labeling changes demonstrate the materiality of the challenged representations and Defendant's awareness that consumers interpret GLP-1-related appetite-control claims as communicating meaningful physiological and metabolic benefits.

37. In recent years, GLP-1 receptor agonist drugs have received extensive media attention and widespread consumer recognition for their ability to suppress appetite, reduce cravings, regulate metabolism, and promote weight loss.

38. As a result, reasonable consumers increasingly associate the term "GLP-1" with meaningful appetite-control and weight-management functionality.

39. Defendant intentionally leveraged these consumer associations by prominently emphasizing GLP-1 functionality together with craving-control and appetite-related claims.

40. Defendant's advertising therefore conveyed that the Product provided meaningful GLP-1-related appetite-control functionality and physiological benefits beyond those associated with ordinary fiber supplements.

41. In reality, the Product consists primarily of conventional dietary fiber and resistant starch ingredients.

42. While certain dietary fibers may indirectly influence satiety pathways or endogenous GLP-1 signaling to a limited degree under some circumstances, such effects are indirect, variable, modest, and highly distinguishable from the clinically meaningful appetite-suppressing effects consumers reasonably associate with GLP-1-related interventions.

43. Defendant's advertising materially exaggerated the significance and expected consumer benefit of any potential fiber-related satiety effects.

8

44. By representing that the Product was "Clinically Proven," "Proven to Control Cravings Naturally," a "GLP-1 Booster," and later representing that the Product supports "appetite control" and "curb[ing] cravings naturally," Defendant created the misleading net impression that the Product provided clinically meaningful appetite-control and metabolic functionality associated with GLP-1-based interventions.

45. Defendant failed to disclose material information necessary to make these representations not misleading, including that any potential relationship between ordinary dietary fiber consumption and endogenous GLP-1 signaling is indirect, variable, modest, and not comparable to the appetite-suppressing effects consumers reasonably associate with GLP-1-related products.

46. Consumers lack the scientific expertise necessary to independently evaluate the physiological significance of dietary fiber ingredients or the extent to which such ingredients may meaningfully affect GLP-1-related pathways.

47. Consumers therefore reasonably rely on Defendant's labeling and marketing representations when purchasing the Product.

48. Defendant knew or should have known that consumers would interpret "GLP-1 Booster," "Clinically Proven," "Proven to Control Cravings Naturally," "appetite control," and similar representations as communicating appetite-related and metabolic benefits associated with GLP-1 functionality.

49. Despite emphasizing GLP-1-related and appetite-control benefits, Defendant failed to adequately disclose that the Product consists primarily of common dietary fiber and resistant starch ingredients, including maize fiber, green banana resistant starch, resistant potato starch, and beta glucan. The labeling omitted material information necessary for consumers to evaluate the nature, significance, and likely physiological impact of those ingredients and whether the Product could reasonably deliver the appetite-control and metabolic benefits communicated by Defendant's advertising.

50. As described above, Defendant's advertising and labeling of the Product as a "GLP-1 Booster" that was purportedly "Clinically Proven" and "Proven to Control Cravings Naturally"

9

were unlawful and misleading. While certain dietary fiber ingredients may indirectly influence satiety-related pathways under some circumstances, the Product consists primarily of ordinary dietary fiber and resistant starch ingredients whose likely physiological effects were materially exaggerated through Defendant's GLP-1-related marketing representations. Defendant failed to disclose material information necessary to prevent its labeling from misleading reasonable consumers, including that any potential relationship between the Product's ingredients and endogenous GLP-1 signaling is indirect, variable, modest, and not comparable to the clinically meaningful appetite-suppressing and metabolic benefits reasonably conveyed by Defendant's advertising. These representations and omissions were intended to, and did, induce consumers to purchase the Product at a premium price. Had reasonable consumers known the true nature, limitations, and likely physiological impact of the Product, they would not have purchased it or would have paid substantially less for it.

**Consumer Demand for GLP-1 and Appetite-Control Products**

51.     Many consumers are health conscious and actively seek products marketed as supporting appetite control, weight management, metabolic health, and reduced cravings. In recent years, public awareness of glucagon-like peptide-1 ("GLP-1") has increased significantly due to widespread discussion of its role in regulating hunger, satiety, insulin response, and body weight. Consumers routinely rely on front-of-package claims, product names, and health-related marketing statements when selecting supplements and functional food products. Products marketed using GLP-1-related or appetite-control representations command premium prices based on their perceived physiological and metabolic benefits.

52.     Given widespread consumer familiarity with GLP-1 receptor agonist drugs and their appetite-suppressing effects, reasonable consumers understand prominent "GLP-1 Booster" representations to communicate meaningful appetite-control and metabolic functionality beyond ordinary digestive support or generalized fiber supplementation.

53.     Scientific literature recognizes that clinically significant appetite suppression and weight-management effects associated with GLP-1 therapies are typically linked to direct

10

pharmacologic GLP-1 receptor agonism and other interventions demonstrated to meaningfully influence GLP-1-related pathways.[2] By contrast, while certain dietary fibers may undergo fermentation in the gut and indirectly influence endogenous GLP-1 secretion through short-chain fatty acid production, such effects are modest, variable, and not equivalent to pharmacologic GLP-1-related appetite-control or metabolic benefits.[3] Under federal and parallel California law, labeling is misleading if it omits material facts necessary to make affirmative representations not misleading. 21 U.S.C. § 343(a); 21 C.F.R. § 1.21(a); Cal. Civ. Code § 1770(a)(5), (7). Where a manufacturer prominently markets a product as a "GLP-1 Booster" that purportedly controls cravings and supports appetite control, but fails to disclose the limited and indirect nature of any potential relationship between the Product's ingredients and endogenous GLP-1 signaling, consumers are deprived of material information necessary to evaluate the Product's likely physiological impact.

54. Reasonable consumers would not expect ordinary dietary fiber ingredients alone to provide the type or degree of appetite-control and metabolic benefits communicated by Defendant's advertising. Although certain fibers may indirectly influence satiety-related pathways under some circumstances, those effects are not equivalent to the clinically meaningful appetite-control and metabolic benefits consumers associate with GLP-1-related interventions.

55. Similarly, marketing a product as boosting GLP-1, controlling cravings, or quieting hunger communicates that the product is capable of providing meaningful appetite-control and metabolic benefits associated with GLP-1 functionality. Consumers reasonably understand such

---

[2] Wilding JPH et al., *Once-Weekly Semaglutide in Adults with Overweight or Obesity*, 384 **N. Engl. J. Med.** 989–1002 (2021) (demonstrating significant weight reduction through GLP-1 receptor agonism) https://doi.org/10.1056/NEJMoa2032183 (as of Feb. 26, 2026); Pi-Sunyer X et al., *A Randomized, Controlled Trial of 3.0 mg of Liraglutide in Weight Management*, 373 **N. Engl. J. Med.** 11–22 (2015) (showing dose-dependent weight loss associated with GLP-1 receptor activation) https://doi.org/10.1056/NEJMoa1411892 (as of Feb. 26, 2026); Drucker DJ, *Mechanisms of Action and Therapeutic Application of GLP-1*, 27 **Cell Metabolism** 740–756 (2018) (explaining receptor-mediated appetite and metabolic effects of GLP-1 agonists) https://doi.org/10.1016/j.cmet.2018.03.001 (as of Feb. 26, 2026).

Nauck MA & Meier JJ, *Incretin Hormones: Their Role in Health and Disease*, 20(S1) **Diabetes Obes. Metab.** 5–21 (2018) https://doi.org/10.1111/dom.13129 (as of Feb. 26, 2026)

[3] Tolhurst G et al., *Short-Chain Fatty Acids Stimulate GLP-1 Secretion via FFAR2*, 61 **Diabetes** 364–371 (2012) https://doi.org/10.2337/db11-1019 (as of Feb. 26, 2026); Chambers ES et al., *Effects of Targeted Delivery of Propionate to the Human Colon on Appetite Regulation*, 64 **Gut** 1744–1754 (2015) https://doi.org/10.1136/gutjnl-2014-307913 (as of Feb. 26, 2026).

Class Action Complaint

representations to convey more than ordinary digestive support or generalized fiber supplementation.

56. Consumers lack the ability to independently evaluate the physiological significance of dietary fiber ingredients or the extent to which such ingredients are likely to provide the appetite-control and metabolic benefits communicated by Defendant's advertising. Consumers therefore rely on manufacturers to provide truthful, complete, and non-misleading labeling and marketing representations.

57. At the time Plaintiff purchased the Product, Defendant marketed SuperGut GLP-1 Booster as a product capable of controlling cravings, quieting hunger, and providing meaningful GLP-1-related appetite-control benefits. However, Defendant failed to disclose material information regarding the limited and indirect nature of any potential relationship between the Product's ingredients and endogenous GLP-1 signaling.

58. Upon information and belief, the Product consists primarily of conventional dietary fiber and resistant starch ingredients that may support ordinary digestive or satiety-related functions but are unlikely to provide the type or degree of GLP-1-related appetite-control and metabolic benefits reasonably communicated by Defendant's advertising. By emphasizing "GLP-1 Booster," craving-control, and appetite-related benefits, Defendant conveyed that the Product provided meaningful physiological functionality beyond what reasonable consumers would expect from a conventional fiber supplement.

59. These representations and omissions misled consumers and enabled Defendant to charge a price premium for a Product that was not materially different from other conventional fiber supplements that do not make comparable GLP-1-related marketing claims.

**Federal and State Regulations Governing Food Labeling**

60. Federal and California law strictly regulate the labeling and marketing of packaged food and dietary supplement products, including representations concerning metabolic effects, appetite control, hormonal activity, and health-related benefits. The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., and its implementing regulations, including 21

12

C.F.R. § 101 et seq., govern nutrient content claims, health-related claims, structure/function claims, and the circumstances under which a food is deemed misbranded. California has adopted these federal labeling standards through the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875 et seq. Health and Safety Code § 110100 provides that all food labeling regulations adopted pursuant to the FDCA are the food labeling regulations of this state. Accordingly, the federal requirements discussed herein apply equally under California law, and the state law claims asserted in this action impose no obligations different from, or in addition to, federal law.

61.     The FDCA provides that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a). Labeling is misleading not only when it contains affirmative false statements, but also when it fails to reveal material facts necessary to make the representations made, in light of the circumstances under which they are made, not misleading. 21 C.F.R. § 1.21(a). California's Sherman Law incorporates and mirrors this prohibition. Cal. Health & Saf. Code §§ 110100, 110760. Thus, a product marketed as a "GLP-1 Booster" that "control[s] cravings" and "quiets hunger" is misbranded if those representations are misleading or omit material information – such as the fact that the product consists primarily of common dietary fiber and resistant starch ingredients unlikely to provide the type or degree of clinically meaningful appetite-control or metabolic benefits reasonably communicated by Defendant's advertising – thereby misleading reasonable consumers.

**The Product's Labeling Violates Federal and State Regulations**

62.     Federal law provides that a food is misbranded if its labeling is false or misleading in any particular. (21 U.S.C. § 343(a).) Labeling is misleading not only where it contains affirmative misstatements, but also where it fails to disclose material facts necessary to make the representations made, in light of the circumstances under which they are made, not misleading. California has adopted these standards through the Sherman Food, Drug, and Cosmetic Law (Health & Saf. Code, §§ 110100, 110760), which imposes identical requirements on products sold in this state.

63.     FDA regulations further govern nutrient content claims and health-related or structure/function representations appearing on food and dietary supplement labeling. (21 C.F.R. §

13

101.13.) A "nutrient content claim" includes any statement that expressly or implicitly characterizes the level of a nutrient in a product. (21 C.F.R. § 101.13(b)). Such claims may not be made if they are false or misleading in any respect. (21 C.F.R. § 101.13(i)(3). In addition, structure/function claims made for dietary supplements must be truthful, not misleading, and substantiated. 21 U.S.C. § 343(r)(6).

64. Claims that a product can "boost GLP-1," "control cravings," or quiet hunger constitute express and implied representations regarding physiological and metabolic effects. Such statements characterize the Product as capable of providing meaningful appetite-control and metabolic benefits associated with GLP-1 functionality. A product that bears labeling implying hormonal or appetite-suppressing benefits it does not provide, or that omits material information regarding the likely physiological impact of its ingredients, is misbranded within the meaning of federal and California law.

65. At the time Plaintiff purchased the Product, Defendant marketed SuperGut GLP-1 Booster as a product that enhances or boosts GLP-1 activity and delivers appetite-control and metabolic benefits. Defendant now markets the Product under the name 'GLP-1 Daily Support' while continuing to emphasize appetite-related functionality.

66. However, Defendant fails to disclose that the Product consists primarily of common dietary fiber and resistant starch ingredients, including maize fiber, green banana resistant starch, resistant potato starch, and beta glucan, which are unlikely to provide the type or degree of appetite-control and metabolic benefits reasonably communicated by Defendant's advertising. Nor does Defendant disclose that any potential fiber-related effects on endogenous GLP-1 secretion are indirect, modest, and not comparable to pharmacologic GLP-1 receptor agonism.

67. By emphasizing GLP-1–boosting and hunger-curbing or controlling benefits without disclosing material information necessary for consumers to evaluate the Product's actual functional capacity, Defendant renders the Product's labeling false and misleading. Under 21 C.F.R. § 101.13(i)(3), a manufacturer may not make a claim about the presence or functional effect of a nutrient or ingredient if that claim is false or misleading in any respect. Even statements that are literally true may violate federal and state law if they create a misleading net impression.

14

68. The FDA has recognized that consumers often lack the scientific expertise necessary to independently evaluate the physiological implications of health-related claims. For that reason, federal regulations prohibit labeling that may mislead consumers into believing a product will confer a health benefit when it will not. Defendant's marketing of the Product as providing meaningful GLP-1-related appetite-control benefits, without disclosure of its physiological impact as a conventional fiber supplement, created precisely such a misleading impression.

69. The Product is therefore misbranded under 21 U.S.C. section 343(a) and parallel provisions of the Sherman Law, including (California Health & Safety Code § 110660, et. seq.), including but not limited to:

   a. Section 110665, because the Product's labeling does not conform to federal labeling requirements where it characterizes physiological and metabolic effects in a manner that is false or misleading within the meaning of 21 U.S.C. § 343(a) and related regulations;

   b. Section 110705, because words, statements, and other information required to prevent the labeling from being misleading—including disclosure of the Product's functional limitations and the absence of clinically meaningful GLP-1-related appetite-control or metabolic benefits—are missing or not sufficiently conspicuous;

   c. Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

   d. Section 110765, which makes it unlawful for any person to misbrand any food; and

   e. Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

70. Defendant's marketing, advertising, and sale of the Product also violate the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, et. seq.), including, but not limited to:

a. Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b. Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

c. Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

71. A reasonable consumer would expect that a product marketed as a "GLP-1 Booster" that purportedly "control[s] cravings" and includes representations concerning "Appetite Control" would provide meaningful appetite-control benefits beyond those associated with ordinary fiber supplementation. Consumers lack the ability to independently evaluate the physiological impact of dietary fiber ingredients on hormonal pathways at the point of sale. They therefore reasonably rely on Defendant's front-of-package representations and marketing claims.

72. Defendant knew and intended that consumers would rely on its prominent "GLP-1 Booster," "Clinically Proven," and "Proven to Control Cravings Naturally" claims when deciding whether to purchase the Product. These claims were prominently displayed and designed to distinguish SuperGut GLP-1 Booster from ordinary fiber supplements, thereby enabling Defendant to command a price premium.

**Defendant Misleadingly Markets the Product to Increase Profits and Gain a Competitive Edge**

73. During the relevant Class Period, Defendant marketed the Product under the name "Supergut GLP-1 Booster" and prominently represented that the Product could "control cravings," and provide GLP-1-related appetite-control benefits. Through this branding and marketing strategy, Defendant conveyed that the Product was more advanced, effective, and functionally distinct from ordinary fiber supplements and competing products that do not make comparable GLP-1-related efficacy claims.

16

74.     Defendant later revised the Product's branding and labeling, including changing the Product name from "Supergut GLP-1 Booster" to "Supergut GLP-1 Daily Support" and replacing stronger craving-control claims with softer "appetite control" and "curb cravings naturally" language. Despite these revisions, Defendant continues to market the Product using GLP-1-related and appetite-related representations that communicate meaningful appetite-control and metabolic benefits to consumers.

75.     Defendant has also marketed additional products using substantially similar GLP-1-related and craving-control representations, including a prebiotic shake marketed using claims such as "Boost GLP-1" and "Control Cravings." These consistent marketing themes demonstrate Defendant's broader strategy of leveraging consumer familiarity with GLP-1-related appetite-control products to increase sales across its product line.

**Defendant's Conduct Causes Ongoing Consumer Harm**

76.     Consumers are willing to pay more for products marketed as supporting appetite control, craving reduction, metabolic health, and weight management, particularly products associated with GLP-1 functionality. Defendant leveraged these consumer preferences by marketing the Product using GLP-1-related and appetite-control representations designed to distinguish the Product from ordinary fiber supplements and justify a premium price.

77.     In recent years, the market for GLP-1-related and appetite-control products has expanded significantly due to widespread consumer interest in products associated with appetite suppression, metabolic support, and weight management. Defendant was aware of this growing consumer demand and intentionally positioned the Product to capitalize on it through prominent GLP-1-related branding and marketing.

78.     At the time Plaintiff purchased the Product, Defendant marketed the Product under the name "SuperGut GLP-1 Booster" and prominently represented that the Product was "Clinically Proven" and "Proven to Control Cravings Naturally." Defendant later revised the Product's branding and labeling, including changing the Product name to "SuperGut GLP-1 Daily Support" and replacing stronger craving-control claims with softer "appetite control" and "curb cravings

17

naturally" language. Despite these revisions, Defendant continues to market the Product using GLP-1-related and appetite-related efficacy representations.

79. Defendant has also marketed additional products using substantially similar GLP-1-related and craving-control representations, including products advertised as capable of "Boost[ing] GLP-1" and "Control[ling] Cravings." These consistent marketing themes reflect Defendant's broader strategy of leveraging consumer familiarity with GLP-1-related appetite-control products to increase sales across its product line.

80. Absent judicial intervention, Defendant is likely to continue marketing the Product in a manner that misleadingly communicates clinically meaningful appetite-control and GLP-1-related benefits beyond what reasonable consumers are likely to experience from ordinary dietary fiber ingredients.

### PLAINTIFF'S EXPERIENCES

81. On one or more occasions within the last four years, Plaintiff purchased the Product from retail stores and online from her home in San Mateo, California.

82. Plaintiff made each purchase after reading and relying on Defendant's representations that the Product was a GLP-1 "Booster," which was "Clinically Proven" to "Control Cravings Naturally," and improve digestion. Plaintiff understood these statements to mean that the Product contained ingredients that would provide meaningful appetite-control and metabolic benefits associated with GLP-1 functionality. Plaintiff believed these representations were truthful and relied on them in deciding to purchase the Product. Had Defendant not made these GLP-1–boosting and appetite-control claims, Plaintiff would not have been drawn to the Product and would not have purchased it. At a minimum, Plaintiff would have paid less.

83. Prior to purchasing the Product for the first time, Plaintiff reviewed the ingredient list and nutrition information. Plaintiff reasonably expected that a product marketed as a "GLP-1 Booster" that controls cravings and supports appetite control would provide meaningful appetite-control and metabolic benefits beyond those associated with ordinary dietary fiber supplementation. Because this material information was omitted, Plaintiff had no reason to suspect that the Product

18

would not deliver the represented effects.

84. When purchasing the Product, Plaintiff was specifically seeking a supplement that would meaningfully assist with appetite control, reduce cravings, and support weight management. Plaintiff purchased the Product in reliance on Defendant's representations that the Product was a "GLP-1 Booster," was "Clinically Proven," and was "Proven to Control Cravings Naturally." After using the Product as directed, Plaintiff experienced no meaningful reduction in appetite, decrease in cravings, change in weight, or other benefits reasonably associated with Defendant's GLP-1-related marketing representations. Had Plaintiff known the true nature, limitations, and likely physiological impact of the Product, she would not have purchased it or would have paid substantially less for it.

85. Plaintiff continues to desire to purchase appetite-control and weight-management products, including products marketed by Defendant, provided that they are truthfully labeled and comply with applicable law. However, because consumers cannot independently determine whether a product marketed using GLP-1-related efficacy claims is likely to provide the represented benefits, Plaintiff cannot presently rely on Defendant's labeling and faces a substantial risk of future harm absent injunctive relief.

86. Plaintiff and members of the Class suffered economic injury because the Product was worth less than represented and was sold at a price premium attributable to Defendant's misleading GLP-1-related and appetite-control representations.

## CLASS ACTION ALLEGATIONS

87. Plaintiff brings this action under Code of Civil Procedure §382, as an individual and on behalf of all other persons similarly situated. The putative class that Class Representative seeks to represent is composed of: All persons who purchased the Product in the State of California (hereinafter the "Class").

88. Excluded from the Class are the natural persons who are directors, and officers, of the Defendants. Class Representative expressly disclaims that he is seeking a class-wide recovery for personal injuries attributable to Defendants' conduct.

89. The members of the Class are so numerous that joinder of all members is

19

impracticable. The exact number of class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.

90. Plaintiff's claims are typical of the claims of the members of the Class. All Class members were deceived by Defendants' false advertisement. Likewise, Defendants' misconduct impacted all Class members in the same manner.

91. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with Class members' interests because they were subject to the same false advertising committed by Defendants regarding the Product. Plaintiff has also retained competent counsel with significant experience litigating complex class actions.

92. Defendants have acted in a manner that applies generally to Plaintiff and all Class members. Each Class member has been similarly impacted by Defendants' false advertising of the Product.

93. Common questions of law and fact predominate over questions affecting individual Class members. The common questions of fact and law include:

(a) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are false, deceptive, or misleading to reasonable consumers;

(b) Whether Defendant's actions violate Federal and California laws invoked herein;

(c) Whether marketing the Product as a "GLP-1 Booster" that provides appetite-control and metabolic benefits causes the Product to command a price premium in the market;

(d) Whether Defendant's failure to adequately disclose that the Product consists of common dietary fiber and resistant starch ingredients unlikely to provide the type or degree of clinically meaningful GLP-1-related appetite-control or metabolic benefits was likely to deceive reasonable consumers;

(e) Whether Defendant's representations and omissions regarding the Product's ability to meaningfully influence GLP-1 signaling, suppress appetite, reduce cravings, or support weight management are material to a reasonable consumer;

(f) Whether Defendant's engaged in the behavior knowingly, recklessly, or negligently in marketing the Product as GLP-1–related appetite and metabolic benefits they do not deliver;

94. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The individual prosecution of separate actions by individuals would lead to repetitive adjudication of common

20

questions of fact and law and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. There will be no difficulty in the management of this action as a class action.

95. Proper and sufficient notice of this action may be provided to the Class members through direct mail.

96. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Class Representative and the members of the Class will continue to be deceived by Defendants' false advertising of the Product.

## CAUSES OF ACTION

97. Plaintiff does not plead, and hereby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

### FIRST CAUSE OF ACTION
**Violation of the Consumers Legal Remedies Act**
**[Civil Code § 1750 *et seq*.]**
**(Against All Defendants)**

98. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

99. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

100. Plaintiff and other Class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

101. The Product that Plaintiff (and other similarly situated Class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

102. Defendant's acts, practices and omissions, set forth in this Complaint, led customers

21

to falsely believe that the Product meaningfully boosts GLP-1 activity, provides meaningful GLP-1-related appetite-control benefits, controls cravings, quiets hunger, and provides measurable appetite-control and metabolic benefits. By engaging in the actions, representations and conduct set forth in this Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA.

103. In violation of California Civil Code § 1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods it sold. In violation of California Civil Code § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.

104. In violation of California Civil Code § 1770(a)(7), Defendant's acts, practices, and omissions constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

105. In violation of California Civil Code § 1770(a)(8), Defendant deceptively markets and advertises that, unlike ordinary fiber supplements or competing products that do not reference GLP-1, its Product provides superior appetite-control and metabolic functionality. In reality, the Product consists primarily of common dietary fiber and resistant starch ingredients unlikely to produce and have not demonstrated clinically meaningful GLP-1-related appetite-control or metabolic benefits.

106. In violation of California Civil Code § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised. Finally, Defendant had a duty to disclose material facts necessary to make its representations not misleading, including that the Product consists only of general dietary fiber ingredients, that any fiber-related effects on endogenous GLP-1 secretion are indirect and modest, and that the Product is not likely to produce nor demonstrated clinically meaningful GLP-1-related appetite-control or metabolic benefits. Defendant's failure to disclose this information rendered its labeling false and misleading under federal law (21 U.S.C. § 343(a)) and parallel California law.

107. Plaintiff requests that this Court enjoin Defendant from continuing to employ the

22

unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm. Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

108. On or about February 10, 2026, Defendant was provided with notice and a demand to correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify consumers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), as an individual and on behalf of those similarly situated Class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

109. Plaintiff also requests that this Court award costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**SECOND CAUSE OF ACTION**
**Violation of the False Advertising Law**
**[Business And Professions Code Section 17500, Et Seq.]**
**(Against all Defendants)**

110. Plaintiff and the Class hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows.

111. Beginning at an exact date unknown to Plaintiff, but within four (4) years preceding the filing of the Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Product.

112. Defendant made affirmative representations and omissions that led reasonable consumers to believe that the Product provided meaningful GLP-1-related appetite-control and metabolic benefits, including by marketing the Product as a "GLP-1 Booster" that purportedly controlled or curbed cravings and quieted hunger. Through its product name, packaging, and marketing, Defendant conveyed that the Product would provide benefits beyond those associated with ordinary fiber supplementation. In reality, however, the Product consists primarily of

23

conventional dietary fiber and resistant starch ingredients whose likely physiological effects were materially exaggerated through Defendant's GLP-1-related marketing representations. Defendant further failed to disclose material information necessary to make its representations not misleading, including that any potential relationship between the Product's ingredients and endogenous GLP-1 signaling is indirect, variable, and modest. By creating the misleading impression that the Product provided meaningful appetite-control and metabolic benefits associated with GLP-1 functionality, Defendant misled consumers regarding the nature, function, and value of the Product.

113. Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Defendant's Product or paying less for them.

114. Defendant's acts and omissions are likely to deceive the general public.

115. Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

116. The aforementioned practices, which Defendant used, and continues to use, to their significant financial gain, also constitutes unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

117. As a direct and proximate result of such actions, Plaintiff and the other members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

118. Plaintiff seeks, as an individual and on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest

24

thereon. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in the other causes of action, in the event that such causes of action will not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show class wide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent Class members. See, e.g., *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because the FAL imposes no such mens rea requirement and liability exists even if Defendant acted in good faith.

119. Plaintiff seeks, as an individual and on behalf of those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

120. Plaintiff seeks, as an individual and on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiff, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## THIRD CAUSE OF ACTION

25

**(Common Law Fraud, Deceit, and/or Misrepresentation)**
(Against All Defendants)

121. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

122. Defendant falsely and deceptively represented that the Product meaningfully boosts GLP-1 activity, curbs or controls cravings, quiets hunger and delivers measurable appetite-control and metabolic benefits. Through its product name, packaging, and marketing, Defendant conveyed that the Product provides meaningful appetite-control and metabolic benefits associated with GLP-1 functionality, when it does not.

123. Defendant failed to disclose material information necessary to make its representations not misleading, including that the Product consists primarily of common dietary fiber and resistant starch ingredients; that it does not contain ingredients likely to provide the type or degree of clinically meaningful appetite-control and metabolic benefits reasonably communicated by Defendant's advertising; and that any potential effect of fiber fermentation on endogenous GLP-1 secretion is indirect, modest, and not comparable to therapeutic GLP-1 modulation. Instead, Defendant prominently emphasized claims such as "GLP-1 Booster," "control[s] cravings," and "quiets hunger," thereby misleading consumers into believing the Product was formulated to provide functional, hormone-mediated appetite suppression.

124. These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, and were not reasonably known to Plaintiff or members of the Class. Defendant knew or should have known the true composition and functional limitations of the Product and that it did not contain ingredients likely to provide the type or degree of appetite-control and metabolic benefits reasonably communicated by Defendant's advertising. These misrepresentations and omissions concerned material facts central to Plaintiff's purchasing decision. By misleading Plaintiff and the Class and failing to disclose the truth, Defendant breached its duty not to deceive consumers and profited from that misconduct.

125. Plaintiff and members of the Class reasonably and justifiably relied on Defendant's misrepresentations and omissions. Had they been adequately informed of the Product's true nature and its inability to meaningfully influence GLP-1 signaling and/or provide the type or degree of

26

appetite-control and metabolic benefits reasonably communicated by Defendant's advertising, they would have acted differently by, without limitation: (i) declining to purchase the Product; (ii) purchasing fewer units; or (iii) paying substantially less.

126. Through this fraud, deceit, and material omission, Defendant intended to induce Plaintiff and similarly situated consumers to alter their position to their detriment, specifically by purchasing the Products in reliance on Defendant's representations regarding GLP-1 boosting, craving reduction, and appetite-control benefits.

127. Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's representations and omissions, and, accordingly, were damaged by Defendant.

128. As a direct and proximate result of Defendant's representations and omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Product.

129. Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

**FOURTH CAUSE OF ACTION**
**(Unlawful, unfair, and fraudulent trade practices violation of**
**Bus. & Prof. Code §17200, *et seq.*)**
(Against All Defendants)

130. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

131. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this Complaint.

132. In particular, Defendant has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without

27

limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), et seq. and FDA regulations, which are incorporated into California law pursuant to Cal. Health & Saf. Code §§ 110100(a), 110380, and 110505.

133. Defendant's conduct is also "unfair" and "fraudulent" within the meaning of section 17200. Among other things, Defendant: (i) represents that the Product provides meaningful GLP-1-related appetite-control and metabolic benefits beyond what consumers would reasonably expect from ordinary dietary fiber supplementation; (ii) omits material information regarding the Product's true nature and likely physiological impact, including that any potential fiber-related effect on endogenous GLP-1 secretion is indirect, modest, and not comparable to pharmacologic GLP-1-related appetite-control or metabolic benefits; and (iii) thereby misleads reasonable consumers into believing that the Product delivers clinically meaningful appetite-control benefits when it does not. These practices offend established public policy, are immoral, unethical, oppressive, and substantially injurious to consumers, and provide Defendant with an unwarranted competitive advantage over manufacturers that market ordinary fiber supplements without implying hormone-mediated appetite suppression.

134. Plaintiff and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Product, (ii) purchasing less of the Product, or (iii) paying less for the Product.

135. Defendant's acts and omissions are likely to deceive the general public.

136. Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

137. The aforementioned practices, which Defendant has used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

28

138. As a direct and proximate result of such actions, Plaintiff and the other Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and the Class members lost the amount they paid for the Products.

139. As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

140. Plaintiff seeks, as an individual and on behalf of those similarly situated, equitable relief, including the restitution for the premium and/or full price that the Class Members paid to Defendant as a result of Defendant's conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the California Sherman Law does not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

141. Plaintiff also seeks equitable relief, including restitution, with respect to the UCL "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this Paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show class wide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. See, e.g., *Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire Subclass). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy

at law, if Plaintiff is unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because the UCL imposes no such mens rea requirement and liability exists even if Defendant acted in good faith.

142. Plaintiff seeks, as an individual and on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

143. Plaintiff seeks, as an individual and on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it was not entitled. Plaintiff and those similarly situated have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**
(Against All Defendants)

144. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

145. Plaintiff and members of the Class conferred a benefit on Defendant by purchasing the Product.

146. Defendant has been unjustly enriched in retaining the revenues from Plaintiff and Class members' purchases of the Product, which retention is unjust and inequitable, because Defendant marketed and sold the Products as "GLP-1 Booster" that purportedly curbs or controls cravings, quiets hunger, and supports appetite control, while failing to disclose that the Product contains only conventional dietary fiber and resistant starch ingredients not likely to provide or demonstrated to produce clinically meaningful GLP-1-related appetite-control or metabolic benefits. As a result of these misrepresentations and omissions, Plaintiff and the Class paid money

30

for Products that were worth less than represented and conferred a financial benefit on Defendant to which it is not entitled under principles of equity and good conscience.

147. Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court. Plaintiff and those similarly situated have no adequate remedy at law to obtain this restitution.

148. Plaintiff, therefore, seeks an order requiring Defendant to make restitution to the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class respectfully request that the Court enter judgment against Defendants as follows:

A. A determination that this action is a proper class action under Code of Civil Procedure §382, certifying Plaintiff as Class representative, and appointing the undersigned counsel as Class counsel;

B. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D. An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E. An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F. An award of treble damages, except for those causes of action where treble damages are not legally available;

G. An award of restitution in an amount to be determined at trial;

H. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I. For reasonable attorneys' fees and the costs of suit incurred; and

31

J.   For such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff and the Class demand a trial by jury on all issues so triable as a matter of right.


**POTTER HANDY LLP**

/s/ James M. Treglio

Dated: May 18, 2026                    By: _____

Mark D. Potter, Esq.
James M. Treglio, Esq.
Isabel Rose Masanque, Esq.
Bree Durso, Esq.
Attorneys for the Plaintiff and the Class

32

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| James M. Treglio (SBN 228077), Potter Handy LLP 100 Pine St., Ste 1250, San Francisco, CA 94111 TELEPHONE NO: (415) 534-1911     FAX NO *(Optional)*: (888) 422-5191 E-MAIL ADDRESS *(Optional)*: jimt@potterhandy.com ATTORNEY FOR *(Name)*: Plaintiff, YOLANDA PITRE | **Electronically FILED** by Superior Court of California, County of San Mateo ON **6/10/2026** By  /s/ Padmani Singh  **Deputy Clerk** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Hall of Justice and Records

| PLAINTIFF / PETITIONER: YOLANDA PITRE, an individual and on behalf of all others similarly situated, DEFENDANT / RESPONDENT: UPLIFTING RESULTS LABS, INC. D/B/A SUPERGUT, a Delaware Corporation; | CASE NUMBER: 26-CIV-03984 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 16080843 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents)*: Civil Case Cover Sheet, NOTICE OF ASSIGNMENT FOR ALL PURPOSES, DESIGNATION AS COMPLEX CASE, SETTING OF A CASE MANAGEMENT AND TRIAL SETTING CONFERENCE, AND COMPLEX FEES DUE
3. a. Party served *(specify name of party as shown on documents served)*:
      UPLIFTING RESULTS LABS, INC. D/B/A SUPERGUT, a Delaware Corporation;
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      Registered Agent - 1505 Corporation CSC - LAWYERS INCORPORATING SERVICE, Served Maddie Bright Intake Specialist
4. Address where the party was served:
   2170 GATEWAY OAKS DR # 150N, SACRAMENTO, CA 95833
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 06/08/2026     (2) at *(time)*: 01:45 PM
   b. [ ] **by substituted service.** On *(date)*:     at *(time)*:     I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:     from *(city)*:     or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Page 1 of 2
Code of Civil Procedure, § 417.10

Page 39

5. c. ☐ **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*:                              (2)   from *(city)*:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section)*:

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify)*:

  c. ☐ as occupant.

  d. ☒ On behalf of *(specify)*:    UPLIFTING RESULTS LABS, INC. D/B/A SUPERGUT, a Delaware Corporation;

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| ☐ other: | |

7. **Person who served papers**

  a. Name:                Johnny Adams

  b. Address:             1017 L Street, #654 Sacramento, CA, 95814

  c. Telephone number:     916-719-9626

  d. **The fee** for service was:   $23.35

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ a registered California process server:

        (i) ☐ owner  ☐ employee  ☒ independent contractor

        (ii) Registration No: 1445

        (iii) County: Sacramento

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 06/10/2026

Johnny Adams

| | |
|---|---|
| _____ | _____ |
| (NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL) | (SIGNATURE) |

### SUPERIOR COURT OF SAN MATEO COUNTY
Civil Division
400 County Center, 1st Floor, Room A Redwood City, CA 94063
(650) 261-5100
www.sanmateo.courts.ca.gov

PETITIONER/PLAINTIFF: **YOLANDA PITRE**

RESPONDENT/DEFENDANT: **UPLIFTING RESULTS LABS, INC.**

# FILED

SAN MATEO COUNTY

5/19/2026

**Clerk of the Superior Court**

/s/ Owen Tapang

DEPUTY CLERK

**NOTICE OF ASSIGNMENT FOR ALL PURPOSES, DESIGNATION AS COMPLEX CASE, SETTING OF A CASE MANAGEMENT AND TRIAL SETTING CONFERENCE, AND COMPLEX FEES DUE**

CASE NUMBER:
**26-CIV-03984**

This case has been filed by Plaintiff(s) as a provisionally complex case and/or a putative class action and/or a PAGA representative action.  Pursuant to Local Rule 3.300(a), this action is automatically deemed a "complex case".  This case is assigned for all purposes to the Honorable: **David A. Silberman** in **Department 11,** located at **800 North Humboldt Street, San Mateo, CA 94401**.

ASSIGNED DEPARTMENT INFORMATION

Contact information for your assigned department is as follows:

| Judicial Officer | Department Phone | Department E-mail |
|---|---|---|
| David A. Silberman | | Dept11@sanmateocourt.org |

**A Case Management and Trial Setting Conference is set for 8/27/2026 at 2:00 PM** in **Department 11** of this Court. In anticipation of the Case Management and Trial Setting Conference, counsel for the parties should be prepared to discuss at the hearing and file and serve written Case Management and Trial Setting Conference statements (**in prose and details, not using the standardized Judicial Council form**) with a courtesy copy emailed to complexcivil@sanmateocourt.org AND to Dept11@sanmateocourt.org **at least five court days prior to the Conference**, as to the following:

   a.   Status of Pleadings and Appearance of all Named Parties;

   b.   Status of Discovery, including status of document production, status of depositions, status of completion of merits discovery, and status of expert discovery;

   c.   Status of Settlement or Mediation;

   d.   Listing of All Pending Motions and proposed new hearing date;

   e.   Any anticipated motions and proposed briefing schedule; and

   f.   Any other matters for which the parties seek Court ruling or scheduling.

**Pursuant to Government Code Section 70616, the complex case fee and the first appearance fee must be paid at the time of filing of the first paper in this complex case**.  Plaintiff(s) pay a single complex case fee of $1,000 on behalf of all plaintiffs, whether filing separately or jointly.  Defendant(s) pay a complex case fee of $1,000 each on behalf of each defendant, intervenor, respondent, or adverse party, whether filing separately or jointly, at the time that that party files its first paper in this case, not to exceed $18,000 total.

PLAINTIFF(S) ARE REQUIRED TO SERVE A COPY OF THIS NOTICE ON ALL OTHER PARTIES TO THIS ACTION OR PROCEEDING, and promptly file proof of service.

Rev. October 2024

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, by electronic service to the parties or their counsel of record at the email addresses set forth below and shown by the records of this court, or, if a physical mailing address is present below, by placing the document(s) in an envelope for collection and mailing, following the Court's ordinary business practices for collecting and processing correspondence for mailing. On the same day the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Date:  5/19/2026

Clerk of the Court, Court Executive Officer/Clerk

By:   /s/ Owen Tapang
        Owen Tapang, Deputy Clerk

**Copies served to:**

JAMES M TREGLIO
JIMT@POTTERHANDY.COM

Rev. October 2024

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN MATEO**

| | |
|---|---|
| NAME, | Case No. _____ |
| Plaintiff, | **CASE MANAGEMENT ORDER NO. 1** |
| vs | Assigned for All Purposes to |
| NAME(S), and DOES 1-___, inclusive, | Hon. David A. Silberman, Dept. 11 |
| Defendants. | Action Filed: _____ |
| | Trial Date: _____ |

Pursuant to the order assigning this case – which had been previously designated as complex – for all purposes to Judge David A. Silberman in Department 11 of this Court, IT IS HEREBY ORDERED as follows:

**GENERAL MATTERS**

1. All parties are expected to be familiar with the San Mateo County Superior Court Local Rules, the California Rules of Court (CRC), and the Deskbook on the Management of Complex Civil Litigation.

2. All counsel are expected to adhere to the provisions of the California Attorney Guidelines of Civility and Professionalism available at https://www.calbar.ca.gov/legal-professionals/ethics-compliance-practice-resources/ethics/attorney-civility-and-professionalism.

3. The Court expects all counsel to communicate regularly with each other about hearing dates, progress of the case, and settlement possibilities. Meeting and conferring with opposing counsel, either in person or by remote video technology, on procedural and substantive issues is required.

4. Continuances of hearing and trial dates are discouraged. If a continuance is necessary, it must be approved by this Court. Continuances by stipulation are not permitted without prior approval of the Court, and only to a date pre-approved by the Court. Please email Department 11 at dept11@sanmateocourt.org and complexcivil@sanmateocourt.org for available dates before contacting opposing counsel. If preliminary approval is given, a written stipulation must be provided before the hearing or trial date. Electronic signatures on stipulations are permitted.

5. If a case settles before a hearing or trial date the parties must notify Department 11 by telephone at (650) 261-5111and email (dept11@sanmateocourt.org and complexcivil@sanmatecourt.org) as soon as the disposition is agreed upon and must file a Notice of Settlement, Request for Dismissal, Stipulation for Entry of Judgment, or a Judgment on Stipulation, that is ready for the Court's signature. In cases where the Court must approve

the settlement, *e.g.*, in matters such as class actions, shareholder derivative actions, or PAGA cases, the parties must notify Department 11 of the settlement; file preliminary and/or final settlement approval papers, and email all settlement papers to dept11@sanmateocourt.org and complexcivil@sanmateocourt.org; and contact the Clerk of Department 11 to request a preliminary and/or final approval hearing, as appropriate.

<strong>FILINGS AND CORRESPONDENCE</strong>

6. Most appearances may be made in person or by Zoom, unless otherwise ordered by the Court. The Zoom credentials can be found on Judge Silberman's webpage. Please follow the requirements on the website for Zoom appearances.

7. All papers including pleadings, motions, applications, and briefs, except those exempted by statute or rule, shall be filed in compliance with San Mateo County Superior Court Local Rules 2.1.7 and 2.1.8. (*See also* Code Civ. Proc., § 1010.6, subd. (c); Cal. Rules of Court, rules 2.251(c) and 2.253(c).) The submission of proposed orders is governed by paragraph 30 of this Order.

8. Except where another method of service is required by statute or rule, all parties and counsel shall serve and shall accept service of all documents electronically, in conformity with Code of Civil Procedure, section 1010.6 and the California Rules of Court. The documents (other than exhibits) must be text searchable. Please visit www.sanmateocourt.org for more information on e-filing. Please note that any exhibits to electronically filed briefs, declarations, or other documents must be electronically "bookmarked" as required by Cal. Rules of Court, rule 3.1110(f)(4). **ALL PARTIES ARE REMINDED TO BOOKMARK ONLY THE FIRST PAGE OF EACH EXHIBIT AND NOT TO BOOKMARK EVERY PAGE OF EACH FILED DOCUMENT**.

9. The parties must also email copies of all pleadings, motions, and briefs to complexcivil@sanmateocourt.org and include this email address on their proof of service.

10. Appropriate correspondence to Department 11 may be submitted electronically, rather than by paper or telephone, by e-mail addressed to dept11@sanmateocourt.org and

complexcivil@sanmateocourt.org.  Do not fax copies or correspondence to Department 11, as there is no dedicated fax line.  All e-mails must be sent in at least 12-point type and copied to all parties or their counsel of record.  This email address is to receive correspondence, and is not a venue for back-and-forth communications with the judge.  Communications to these email addresses are not part of the official court files – just like a paper letter, they are not "filed" documents – and will be retained for at least 30 days and then be subject to deletion (destruction) thereafter.  Department 11 prefers to have communication by email (*copied to all parties*) rather than by telephone.

11.     All communications to Department 11 shall include in the header "subject line" the Department Number, Case Name, Case Number, and a brief description of the email (*e.g.*, "Dept. 11 — Smith v. Jones (CIV654321) – Smith's Request to Set Motion Date").

12.     The Court is eager to assist counsel when specific problems arise that may not require a formal motion. To arrange a conference with the Court that all counsel agree is advisable, please contact the Clerk for Department 11 by email at dept11@sanmateocourt.org and complexcivil@sanmateocourt.org to schedule a time for the conference.  Informal conferences will be conducted by videoconference unless otherwise indicated by the Court. For these informal conferences, briefs on court pleading paper not to exceed three (3) pages – which must be served – may be submitted by email to the Court at dept11@sanmateocourt.org and complexcivil@sanmateocourt.org.

<b>CASE MANAGEMENT CONFERENCES</b>

13.     The Court, rather than the Civil Commissioner, conducts all case management conferences for its complex cases.

14.     At or before the initial Case Management Conference, the parties shall provide the Clerk with an email service list as required by this Order and shall be prepared to indicate whether they agree to email service from the Court.

15.     Plaintiff's counsel is responsible for maintaining and updating the email service list and the Proof of Service and notifying the Clerk of Department 11 of any changes at

Complex Case Management Order No. 1

dept11@sanmateocourt.org and complexcivil@sanmateocourt.org. Judge Silberman suggests that the email list include the attorneys and support staff who the parties wish to obtain communications from the Court and all other parties.

16. After the first conference, future case management conferences are scheduled as necessary to monitor the progress of the case and to assist counsel and the parties as the matter progresses. Counsel thoroughly familiar with the case, and with authority to make decisions regarding the case must attend all case management conferences.

17. Judicial Council Form CM-110, Civil Case Management Statement (required by Cal. Rules of Court, rule 3.725(c)) is not well-suited for complex cases. Accordingly, the parties shall file a joint case management conference statement no later than six (6) calendar days before the hearing for each conference that includes the following:

(a) A brief objective summary of the case.

(b) A summary of any orders from prior case management conferences and the progress of the parties' compliance with those orders.

(c) A summary of the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues.

(d) Anticipated motions, including a proposed briefing schedule when applicable.

(e) A summary of any significant procedural or practical problems that are likely to arise in the case such as (this list is not intended to be exhaustive or applicable to every case):

(1) unserved parties and reasons for the failure to serve;

(2) unserved or unfiled cross-complaints;

(3) related actions pending in any jurisdiction, a brief description of those actions (including their current procedural posture), and the potential for coordination or consolidation;

(4) jurisdictional or venue issues that may arise;

(5) severance of issues for trial; and

(6) calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

(f) Status of settlement or mediation.

(g) Suggestions for efficient management of the case, including a proposed discovery plan and timeline of key events (including proposed dates for future law and motion and trial).

(h) Any other matters that the parties believe will assist the Court in determining an effective case management plan.

(i) A proposed date for the next CMC.

### EX PARTE APPLICATIONS

18. Ex parte appearances are discouraged except in unusual situations. Hearing dates for ex parte applications must be coordinated by email with the Clerk for Department 11 at dept11@sanmateocourt.org and complexcivil@sanmateocourt.org. The Court hears ex parte applications on Tuesdays and Wednesdays at 1:30 p.m. The Court's consideration of an ex parte application will not interfere with or delay any trial in progress. Strict compliance with California Rules of Court, rules 3.1200 – 3.1207 is required.

19. All papers necessary to the determination of the application, including any proposed pleading, motion, or order, must be submitted to Department 11, preferably by email (to dept11@sanmateocourt.org and complexcivil@sanmateocourt.org), by noon the court day before the scheduled ex parte hearing date.

### DISCOVERY

20. All discovery sought pursuant to the Code of Civil Procedure, including but not limited to notices of deposition, special interrogatories, form interrogatories, requests for production of documents, and requests for admission, must be served electronically upon counsel for the parties. All discovery responses by a party in response to discovery propounded by another party must be provided in electronic form, unless the parties agree otherwise in writing. Counsel for the parties must meet and confer regarding the possible

establishment of a joint electronic document depository for uploading and downloading electronic document productions. The Court expects the parties to meet and confer regarding the scope, format, and timing of the production of documents, including electronically stored information (ESI), and to consider, among other things, proportionality and expense, in seeking the production of ESI.

21. Discovery meet and confer obligations require an in person or videoconference between counsel and, where a party is appearing in propria persona, the parties, unless otherwise ordered by the Court. If a resolution is not reached, the parties must meet with the Court for all discovery-related matters in an informal discovery conference (IDC) before filing any discovery motion unless otherwise authorized by the Court. **No discovery motion will be heard without an IDC**.

22. After the parties have conducted a meaningful meet and confer, requests for an IDC may be made by sending an email copied to all counsel to Department 11 at dept11@sanmateocourt.org and complexcivil@sanmateocourt.org. The Court will provide proposed dates. Parties are to meet and confer as to availability for the proposed dates. If one or more parties are not available on the proposed date(s), additional dates may be requested. The Court will inform the parties whether the IDC will be conducted by videoconference or in person. The Court will also consider requests from depositions in progress. IDCs may not be recorded by any party and may not be reported by any court reporter.

23. For the IDC, each side must serve and email to the Court at both dept11@sanmateocourt.org and complexcivil@sanmateocourt.org a short brief limited to no more than five (5) pages, at least three (3) court days before the IDC. If necessary to the resolution of the issues, the requesting party's brief may include an exemplar of the discovery requests and responses (if any) at issue. Do not attach the discovery requests and responses.

24. All requests for an IDC must be made well before the expiration of the statutory time to bring a motion to compel or other discovery motion. The parties are strongly encouraged to stipulate to extend the time to file motions to compel or other discovery motions.

**LAW AND MOTION**

25. This Court believes that pre-hearing conferences between counsel may be useful in avoiding useless, or mitigating inefficient, motion hearings. Therefore, in addition to meeting and conferring pre-filing, before the hearing of any motion, petition, or application, (except applications to appear pro hac vice and motions to withdraw as counsel of record), all counsel and persons appearing in propria persona shall confer in a good faith attempt to eliminate the necessity of the hearing or to resolve as many disputes as possible. Counsel for the moving party shall arrange the conference, which either must be in person or by videoconference, to meet and confer at least four (4) court days before the hearing and shall submit to the Court at least three (3) court days before the hearing a short declaration establishing that the meet and confer conference occurred and describing any agreements that counsel have reached.

26. With respect to motions or other matters requiring a hearing, after the moving party has cleared the proposed hearing date(s) with the other parties, the moving party must contact the Clerk of Department 11 by email at dept11@sanmateocourt.org and complexcivil@sanmateocourt.org to obtain the hearing date. Counsel for the moving party must provide the Court with the case name and number; the type of hearing; the hearing date(s) requested; and the name, telephone number, and email address of the filing attorney.

27. So long as any reply is filed at least two (2) weeks before the hearing date, the parties may agree on any briefing schedule and submit a stipulation and proposed order with the agreed-upon schedule for the Court's signature.

28. **For all motions** – the moving party shall provide the Court with one complete set of courtesy copies of all motions and related papers filed by all parties in a binder stamped "Judge's Copy." All exhibits must be separated by exhibit tabs. (*See, e.g.,* Cal. Rules of Court, rule 3.1110(f).) The binder must be delivered within two court days of filing directly to Department 11 by hand or overnight mail to Courtroom G, 800 No. Humboldt St., San Mateo, California 94401. Courtesy copies of any electronic exhibits must be submitted on a flash

drive in conformity with the requirements of the California Rules of Court, rules 2.256(b) and 3.1110(f)(4).  The Court cannot receive documents through any type of file sharing.  The requirement to submit courtesy copies is separate from the requirement to email all pleadings to Department 11 at complexcivil@sanmateocourt.org on the date of filing.

29.	Judge Silberman does not need courtesy copies of Case Management Conference Statements or other pleadings or papers that do not relate to a motion.

30.	Proposed Orders must be submitted electronically through the Clerk's office with the information required by California Rule of Court, rule 3.1312.  You must also email an editable version of the Proposed Order in Word format (not PDF) to dept11@sanmateocourt.org and complexcivil@sanmateocourt.org so that the judge can modify it prior to signing, if needed.

31.	Motions or applications to seal must be heard no later than any motion relying on the materials sought to be sealed.  Upon denial of a motion or application to seal, the moving party must notify the Court that the materials are to be filed unsealed (Cal. Rules of Court, rule 2.551(b)) or refrain from relying on the materials, which will not be part of the record.

32.	When the Court sustains a demurrer or grants a motion to strike with leave to amend and an amended pleading is filed, the plaintiff or cross-complainant must file with its opposition to any successive demurrer or motion to strike a redline comparing the amended pleadings to the previous version of the pleading unless otherwise ordered by the Court.

33.	With respect to discovery motions, the parties are relieved of their obligation under rule 3.1345 of the California Rules of Court to file a separate statement.  Instead, the parties must (1) attach the discovery request(s) or deposition question(s) at issue and the written response(s), if any, to the declaration submitted in support of the discovery motion; and (2) submit a concise outline of the discovery request and each response in dispute pursuant to Code of Civil Procedure section 2030.300, subdivision (b)(2).

34.	Counsel for the moving parties must notify Department 11 by telephone and by email at dept11@sanmatecourt.org and complexcivil@sanmateocourt.org as soon as possible

regarding any matter to be taken off calendar or continued.  Notices of continuance of any hearing must be provided by the moving party.

35.     Pursuant to Cal. Rule of Court, rule 3.113(i), Department 11 does not require an appendix of non-California authorities in connection with any memoranda submitted in connection with any motion unless otherwise ordered by the Court with the following exception: Because the Court only has access to non-California authorities via WESTLAW – and NOT via LEXIS – any authorities that are not reported in an official reporter and that are cited must either be: (1) cited using the WESTLAW citation or a citation accessible through WESTLAW; or (2) provided to Department 11 by email at dept11@sanmateocourt.org and complexcivil@sanmatecourt.org.

36.     The Court strongly believes in the importance of training the next generation of trial lawyers.  This training needs to include substantive speaking opportunities in court.  The Court therefore encourages the parties and senior attorneys to allow the participation of junior lawyers in all court proceedings, particularly in arguing motions where the junior lawyer drafted or contributed significantly to the motion or opposition.

37.     The Court typically issues tentative rulings or a list of issues that the Court would like the parties to address at the hearing.  The Court will post its tentative ruling or list of issues by 1:30 p.m. at least one court day before the scheduled hearing.  If any party intends to contest the tentative ruling at the hearing, that party must notify the other parties and Department 11 by email at both dept11@sanmateocourt.org and complexcivil@sanmateocourt.org by 4:00 p.m. at least one court day before the scheduled hearing.  Otherwise, the tentative ruling will become the order of the Court.

**SETTLEMENT CONFERENCES AND MEDIATIONS**

38.     No case will be tried before a good faith effort is made to settle.  The Court strongly encourages the parties to engage in discussions to resolve the matter throughout the litigation, including voluntary mediation.

**MISCELLANEOUS**

39. Any recording of a court proceeding held by video or audio conference, including "screen-shots" or other visual or audio copying of a hearing or conference **IS STRICTLY PROHIBITED**. Violation of these prohibitions may result in sanctions, including restricted entry to or denial of entry to future hearings and conferences, removal of Court-issued media credentials, or any other sanctions deemed appropriate by the Court.

40. The Court may not be able to provide a court reporter for the Pretrial Conference or Trial. Any party that wishes to have a court reporter for the Pretrial Conference or Trial may bring their own reporter if the Court is unable to provide one. Before a party may bring its/his/her/their own court reporter to a proceeding, however, that party MUST comply with Local Rule 2.12. Otherwise, a court reporter is WAIVED.

41. Plaintiff(s) shall serve a copy of this order upon all parties or their designated counsel, who have not yet appeared in this case, including any and all parties added to this action and/or cross-action(s) after the issuance of this order, and shall file a proof of service.

Dated: _____, 202_          _____
                              DAVID A. SILBERMAN
                              Judge of the Superior Court of California

VENABLE LLP
Ari N. Rothman (SBN 296568)
  anrothman@venable.com
Josephine C. Hall (SBN 360230)
  jchall@venable.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone:    310.229.9900
Facsimile:    310.229.9901

*Attorneys for Defendant*
*Uplifting Results Labs, Inc. d/b/a Supergut*

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON      6/29/2026
By      /s/ Kenneth Wong
          Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| YOLANDA PITRE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UPLIFTING RESULTS LABS, INC. D/B/A SUPERGUT, a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 26-CIV-03984<br><br><u>CLASS ACTION</u><br><br>Assigned to:    Hon. David A. Silberman Dept. 11<br><br>**ANSWER TO CLASS ACTION COMPLAINT**<br><br><br>Action Filed:    May 18, 2026<br>Trial Date:      None Set |

Page 54

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

Defendant Uplifting Results Labs, Inc. d/b/a Supergut hereby answers plaintiff Yolanda Pitre's unverified class action complaint as follows:

## GENERAL DENIAL

Pursuant to California Code of Civil Procedure Section 431.30(d), Uplifting Results Labs denies each and every allegation in plaintiff's class action complaint. Uplifting Results Labs further specifically denies that plaintiff is entitled to the relief sought or to any relief whatsoever from Uplifting Results Labs. Uplifting Results Labs also specifically denies that plaintiff has been injured in any way and/or damaged in any sum or amount whatsoever, by reason of any act, breach, or omission on the part of Uplifting Results Labs as alleged in the class action complaint.

## AFFIRMATIVE DEFENSES

Without waiving or excusing plaintiff's burden of proof, and without admitting any allegation in the class action complaint or that Uplifting Results Labs has any burden of proof or persuasion as to any of the affirmative defenses below, Uplifting Results Labs hereby asserts the following separate, distinct, and affirmative defenses to the class action complaint and to each cause of action thereof. Uplifting Results Labs has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. As such, Uplifting Results Labs reserves the right to add, delete, or modify any and all defenses in the event discovery, investigation, or analysis indicate the need for same.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Cause of Action)

1. Neither plaintiff's class action complaint nor any purported cause of action therein states facts sufficient to constitute claims upon which relief may be granted against Uplifting Results Labs.

## SECOND AFFIRMATIVE DEFENSE
### (Consent)

2. Subject to confirmation through discovery, some or all of the plaintiff's claims are barred, in whole or in part, by the doctrine of consent under California Civil Code § 3515. Plaintiff is an experienced and sophisticated consumer who has served as a named plaintiff in numerous

consumer class actions involving alleged product labeling, advertising, and marketing practices. Plaintiff voluntarily purchased the product at issue with knowledge of, familiarity with, and awareness of what she saw when she purchased the product and what she purchased. She also reviewed the product's labeling, packaging, ingredients, and disclosures before making any purchase decision. By purchasing the product despite such knowledge and awareness and/or the ability to learn, she consented to the purchase and circumstances of which she now complains and cannot establish that she was deceived, reasonably relied upon any alleged misrepresentation, or suffered injury as a result.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

3. Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel, based on plaintiff's words, conduct, omissions, and course of dealing and based on the same facts supporting the consent affirmative defense set forth above. Further, plaintiff knowingly purchased the product and accepted the benefits thereof without timely objection. Plaintiff is therefore estopped from asserting claims inconsistent with that conduct or from seeking relief based upon positions contrary to those previously taken.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

4. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver based on the same facts that support the affirmative defense set forth above. Additionally, plaintiff knowingly and voluntarily relinquished any right to challenge the representations at issue by purchasing the product after having the opportunity to review, evaluate and understand its labeling, packaging, ingredient disclosures, and marketing materials, and after acquiring knowledge and experience concerning consumer advertising and labeling claims through her prior lawsuits. Plaintiff's conduct is inconsistent with the assertion of the rights and claims alleged in the class action complaint.

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

DEFENDANT'S ANSWER TO CLASS ACTION COMPLAINT

## FIFTH AFFIRMATIVE DEFENSE

## (Assumption of Risk)

5. Plaintiff's claims are barred, in whole or in part, by the doctrine of assumption of risk. Plaintiff is an experienced and sophisticated consumer who has served as a named plaintiff in numerous consumer class actions involving alleged product labeling, advertising, and marketing practices. Plaintiff voluntarily purchased and used the product at issue with knowledge of, familiarity with, and awareness of what she saw when she purchased the product and what she purchased. She also had the ability and opportunity to review the product's labeling, packaging, ingredients, disclosures, and marketing materials before making any purchase decision. By purchasing the product despite such knowledge and awareness and/or the ability to learn, she assumed the risk of the alleged deception and injury caused by the product representations that she claims deceived her.

## SIXTH AFFIRMATIVE DEFENSE

## (Unclean Hands)

6. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands. Plaintiff is an experienced and sophisticated consumer who has served as a named plaintiff in numerous consumer class actions involving alleged product labeling, advertising, and marketing practices. Nonetheless, she intentionally destroyed or failed to retain evidence about what she purchased, thereby demonstrating plaintiff's inequitable, unconscionable, and bad faith conduct in bringing her claims. Further, plaintiff's purchase, use, and prosecution of claims concerning the product were undertaken with knowledge, motives, or purposes inconsistent with the allegations of deception asserted in the class action complaint. Accordingly, plaintiff is not entitled to equitable relief, including restitution, disgorgement, injunctive relief, or any other equitable remedy.

## PRAYER

WHEREFORE, Uplifting Results Labs prays for judgment and relief as follows:

1. That plaintiff and the putative class members take nothing by way of the allegations in the class action complaint;

2. That judgment be entered in favor of Uplifting Results Labs and against plaintiff on

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

DEFENDANT'S ANSWER TO CLASS ACTION COMPLAINT

each and every cause of action or claim alleged in the class action complaint;

3. That Uplifting Results Labs be awarded its costs of suit, including its attorneys' fees as allowed by law; and

4. For such other relief as the Court may deem just and proper.

Dated: June 29, 2026      VENABLE LLP

By: _____
   Ari N. Rothman
   Josephine C. Hall

   *Attorneys for Defendant*
   UPLIFTING RESULTS LABS, INC.
   D/B/A SUPERGUT

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

DEFENDANT'S ANSWER TO CLASS ACTION COMPLAINT

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, Suite 3400, Los Angeles, CA 90067.

On, **June 29, 2026**, I served a copy ☒ / original ☐ of the foregoing document(s) described as **ANSWER TO CLASS ACTION COMPLAINT** on the interested parties in this action addressed as follows:

| | |
|---|---|
| Mark D. Potter<br>James M. Treglio<br>Isabel Rose Masanque<br>Bree Durso<br>POTTER HANDY LLP<br>100 Pine St., Ste 1250<br>San Francisco, CA 94111 | *Attorneys for Plaintiff Yolanda Pitre*<br><br>Telephone: (415) 534-1911<br>Fax: (888) 422-5191<br>Email: mark@potterhandy.com<br>jimt@potterhandy.com<br>isabelm@potterhandy.com<br>breedurso@potterhandy.com |

☑ **BY ELECTRONIC SUBMISSION AND E-SERVICE VIA ODYSSEY CA-EFILE:** I caused the above-entitled document(s) to be electronically filed and e-served through Odyssey CA-Efile to those parties on the service list maintained by Odyssey. Upon completion of transmission of said document(s), a filing receipt is issued acknowledging receipt, filing, and service by Odyssey's system. A copy of Odyssey's receipt will be maintained with the original document(s) in our office.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **June 29, 2026**, at Los Angeles, California.

_____
Jerod Williams

PROOF OF SERVICE